IN THE MATTER OF THE APPLICATION OF JOSEPH SAD-
LON FOR A RECOUNT FOR THE ELECTION OF MEM-
BER OF THE TOWNSHIP COMMITTEE OF THE TOWN-
SHIP OF INDEPENDENCE IN THE COUNTY OF WAR-
REN AND STATE OF NEW JERSEY.

ALANSON A. REMLEY, DEFENDANT-APPELLANT, v.
JOSEPH SADLON, PLAINTIFF-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 10, 1965—Decided May 27, 1965.

Before Judges GOLDMANN, SULLIVAN and LABRECQUE.

*Mr. John H. Pursel* argued the cause for appellant (*Mr. Benjamin V. Dall,* attorney).

*Mr. Adrian M. Foley, Jr.,* argued the cause for respondent (*Messrs. Pindar, McElroy, Connell & Foley,* attorneys; *Miss Sonia Napolitano,* on the brief).

The opinion of the court was delivered by

GOLDMANN, S. J. A. D. This appeal involves the validity of two ballots cast for the office of township committeeman at the November 3, 1964 general election held in the Township of Independence, Warren County. Joseph Sadlon was the Democratic candidate and Alanson A. Remley the Republican candidate for that office. The board of county canvassers certified that Remley was the winner by one vote, having received 347 votes to Sadlon's 346.

Sadlon filed a complaint seeking a recount pursuant to *N. J. S. A.* 19:28–1 *et seq.* The County Court judge conducted such recount on December 4, 1964 and entered judgment adjudging that Sadlon had received 346 votes and Remley 345 (thereby reversing the previous result), and declaring Sadlon elected as member of the township committee. In arriving at that decision the county judge found that two ballots were invalid: No. 552 (exhibit P-1), because it tended to identify the voter by the placing of an asterisk opposite the public questions on the ballot, and No. 430 (exhibit P-2), because the voter had marked both the "Yes" and "No" squares opposite the public questions.

*N. J. S. A.* 19:15–27 directs that the voter shall mark his ballot with a cross (×), plus (+) or check (✔) in the square to the left of the public question or candidate's name. The top of the official ballot used at the Independence Township election carried voting instructions in bold-face print. The very first instruction specifically provided that "The only kind of a mark to be made on this ballot in voting shall be a cross ×, plus + or check ✔." The three marks were referred to in the succeeding four instructions. Directly below the caption "Public Questions To Be Voted Upon" there again appeared the direction that one of the three authorized marks be used. Despite all this, the voter on ballot P-1 used a mark resembling an asterisk in voting "No" on the two public questions. Both marks were heavy and distinctive, each filling the entire large square. However, in voting for the Republican candi-

dates, the same voter marked a cross (×) in each of the squares.

The second paragraph of *N. J. S. A.* 19:16–4 provides:

"No ballot which shall have, either on its face or back, any mark, sign, erasure, designation or device whatsoever, other than is permitted by this Title, by which such ballot can be distinguished from another ballot, shall be declared null and void, unless the district board canvassing such ballots, or the county board, judge of the Superior Court or other judge or officer conducting the recount thereof, shall be satisfied that the placing of the mark, sign, erasure, designation or device upon the ballot was intended to identify or distinguish the ballot."

In examining the ballot the county judge observed that the voter had used a proper mark in voting for all candidates for office, but had deviated from the instructions where the public questions were involved by using an asterisk. The judge was thus satisfied that the deviation was intended by the voter to distinguish his ballot, and he therefore held the ballot void.

Appellant Remley suggests that the voter on P-1 possibly felt that he ought to make a larger, more emphatic mark because of the larger size of the squares provided for the public questions, or because he felt violently on the bond issues involved and wanted to express his strong feelings. To permit such speculation as a means for validating a ballot marked otherwise than permitted by statute would in the end eliminate any need for the statute itself. The asterisks here were no accident. The voter knew exactly how to mark a ballot properly. The situation is not unlike that involving ballot D-2 with which we dealt in *In re Wade,* 39 *N. J. Super.* 520, 524 (1956).

Under *N. J. S. A.* 19:16–4 the determination of whether a mark, sign, erasure, designation or device upon a ballot was intended to identify or distinguish that ballot is left to the judge conducting the recount. Due regard must be given to the county judge's exercise of his function as a fact-finder. We will not disturb his determination that P-1 was invalidated because of the use of the asterisks.

The voter who voted the Republican column on ballot P-2 placed a lopsided plus mark in both the "Yes" and "No" squares opposite the two public questions. It is not contended here, nor was it below, that this marking was intended to identify or distinguish the ballot, contrary to the second paragraph of *N. J. S. A.* 19:16–4. The county judge ruled the ballot invalid in its entirety, relying upon the language of the first paragraph of *N. J. S. A.* 19:16–4:

"In counting the ballots the board shall deem null and void all ballots which are wholly blank, or on which more names have been marked for every office than there are persons to be elected to such office, and on which both 'Yes' and 'No' have been marked upon every public question. * * *"

In doing so he fell into error.

*N. J. S. A.* 19:16–3(e) deals with a situation like that found on ballot P-2. It provides that

"* * * If a mark is made in each of the squares to the left of both the words 'Yes' and 'No,' it shall not be counted either as a vote in favor of or against the public question nor shall it invalidate the ballot."

Reference should be made to *N. J. S. A.* 19:16–3(f) at this point. It provides:

"If a voter marks more names than there are persons to be elected to an office, * * * his ballot shall not be counted for that office, but shall be counted for such other offices as are plainly marked."

Appellant Remley relies on *N. J. S. A.* 19:16–3(e). He contends that the quoted section of *N. J. S. A.* 19:16–4 can have no application to P-2, for it provides that before a ballot may be declared invalid, it must be (a) wholly blank or (b) the voter must have marked more names for every office than there are persons to be elected, *and* marked both "Yes" and "No" upon every public question. Stress is placed on the conjunctive "and."

Respondent Sadlon concedes that such an interpretation of *N. J. S. A.* 19:16–4 is possible but claims that the statute must be read in conjunction with the provisions of *N. J. S. A.* 19:16–3(e) and (f). He argues that assuming a ballot contained both defects mentioned in *N. J. S. A.* 19:16–4 — *i. e.*, every public question marked with a "Yes" and "No" vote, and more names marked for every office than there are persons to be elected to such offices—no vote on that ballot could be counted under *N. J. S. A.* 19:16–3(e) and (f), and the ballot would be invalid in its entirety without reference to *N. J. S. A.* 19:16–4. Respondent would read *N. J. S. A.* 19:16–4 as providing that a ballot shall be deemed null and void where "more names have been marked for every office than there are persons to be elected to such office, *or* on which both 'Yes' and 'No' have been marked upon every public question." (Italics ours) We cannot agree.

■ The obvious legislative purpose under *N. J. S. A.* 19:16–3(e) and (f) is to save from invalidity such part of the ballot as is properly marked. For example, if the public questions are marked both "Yes" and "No," and the squares opposite the candidates' names properly marked, the ballot is invalid only as to the public questions. Again, if the public questions are properly marked, and the voter marks more names than there are persons to be elected to one or more offices, but not all of the offices, the ballot is valid as to the offices properly marked. It is only where the ballot is left entirely blank, or where the voter clearly shows that he does not know what he is doing by marking *all* the "Yes" and "No" squares opposite the public questions and voting for more names than there are persons to be elected to *all* the offices, that the ballot may be deemed invalid in its entirety.

■ The legislative use of the conjunctive "and" in *N. J. S. A.* 19:16–4 is meaningful. There must be a "Yes" and "No" vote on every public question *and* a vote for more names than are marked for every office than there are persons to be elected, before the ballot may be declared null and void. Respondent Sadlon's attempt to change the "and" to "or"

and to attribute significance to the use of the comma before the word "and" in *N. J. S. A.* 19:16–4, results in a strained construction which would destroy the legislative pattern.

Accordingly, we hold that ballot P-2 was improperly invalidated by the county judge. Since we have held that ballot P-1 was correctly declared invalid, the result is that Remley's vote on the recount is increased from 345 to 346. Sadlon's vote remains at 346. The election thus resulted in a tie. An election will therefore have to be held to fill the office of township committeeman in the Township of Independence.

SULLIVAN, J. A. D. (concurring). I concur in the foregoing opinion. Were I the trial judge, I would not have invalidated ballot P-1, since I am not satisfied that the voter intended to identify or distinguish the ballot. The cross ($\times$) superimposed upon a plus ($+$) might well have been an honest attempt to comply with the voting instructions. However, I recognize that the question is factual, and I am not prepared to say that the trial judge's finding is erroneous.